UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                                    Plaintiff,<br><br>v.<br><br>J. DESHAWN TORRENCE,<br><br>                                    Defendant. | Case No.: 1:22-CR-207 TWR (SKO)<br><br>**ORDER DENYING DEFENDANT'S MOTION FOR A NEW TRIAL MOTION**<br><br>(ECF No. 160) |

Pending before the Court is Defendant J. Deshawn Torrence's Motion for a New Trial ("Mot.," ECF No. 160). The United States has filed a Response to Defendant's Motion ("Resp.," ECF No. 165), and Defendant Torrence has filed a Reply in Support of his Motion ("Reply," ECF No. 126). For the reasons set forth below, the Court **DENIES** Defendant's Motion.

## BACKGROUND

On July 28, 2022, a grand jury sitting in the Eastern District of California returned a ten-count indictment charging Defendant Torrence with utilizing his position as an officer with the Sanger Police Department to identify, target, and deprive female victims of their fundamental right to bodily integrity by committing kidnapping and various forms of sexual abuse. (*See* ECF No. 1.)  Attorney Roger Wilson, who represented Defendant

/ / /

Torrence at trial, began his representation of Defendant Torrence on October 19, 2022.[1] (*See* ECF No. 29.)  A nine-count superseding indictment was returned on June 6, 2024, (*see* ECF No. 58), which contained virtually the same allegations as the initial indictment and added a previously omitted victim.[2]  (*Compare* ECF No. 58 (superseding indictment), *with* ECF No. 1 (initial indictment).)

Defendant Torrence's jury trial commenced on January 15, 2025.  (*See* ECF Nos. 85, 87.)  Over the course of the two-and-a-half-week trial, (*see* ECF Nos. 87–93, 97, 100–02), the jury heard from twenty-five witnesses, (*see* ECF No. 104), including two days of testimony from Defendant Torrence.  After deliberating for approximately ninety minutes, the jury returned guilty verdicts as to all charged counts and enhancements.  (*See* ECF Nos. 102, 107.)

On March 19, 2025, the Court granted Defendant Torrence's post-trial motion for appointment of new counsel, (*see* ECF No. 120), and entered an Order relieving attorney Wilson as counsel of record.  (*See* ECF No. 121.)  On March 27, 2025, the Court appointed present counsel to represent Defendant Torrence.  (*See id.*)

On June 23, 2025, the Court granted Defendant Torrence's request to file an untimely new trial motion.  (*See* ECF No. 147.)  The present Motion was filed on July 21, 2025.  (*See* ECF No. 160.)

## ANALYSIS

Defendant Torrence asserts that attorney Wilson provided him with ineffective assistance of counsel ("IAC") in four respects:  (1) attorney Wilson should have brought his scheduling concerns to the Court's attention during the October 23, 2024, status

---

[1]     For a brief period from March 9, 2023, to March 30, 2023, attorney Wilson did not represent Defendant Torrence.  This was because attorney Wilson transitioned from being Defendant Torrence's retained counsel to being court-appointed counsel during that time period.  (*See* ECF Nos. 43–49.)

[2]     The Court granted the Government's motion to dismiss Count 5 of the superseding indictment prior to trial; thus, only eight counts were submitted to the jury for their consideration.

conference instead of confirming the trial date, (*see* Mot. at 4–8); (2) attorney Wilson should have objected to the testimony of Brooke Bergman during trial, (*see id.* at 8–18); (3) attorney Wilson should have located, interviewed, and called three individuals as witnesses for the defense, (*see id.* at 18–23); and (4) attorney Wilson should have moved to strike Juror Number 6, (*see id.* at 23–24). According to Defendant Torrence, "[the cumulative effect of these errors prevented the proper presentation of a defense and constituted ineffective assistance of counsel that is sufficient to undermine confidence in the outcome" and, "[i]f not for these errors[,] there is a reasonable probability that the result of the proceeding would have been difference." (*See id.* at 24–25.) For the reasons set forth below, the Court respectfully disagrees.

## I. The Court's Ability to Consider the New Trial Motion

As a preliminary matter, the Government argues that Defendant Torrence's IAC-based new trial motion should be summarily denied because it is "not properly before the Court at this stage." (*See* Resp. at 8.) In support of that contention, the Government cites several cases that stand for the proposition that IAC claims must ordinarily be raised by filing a collateral attack on a conviction pursuant to 28 U.S.C. Section 2255. (*See* Resp. at 5–6.) However, none of the cases cited by the Government address a district court's ability to consider a prejudgment IAC claim.

The Court finds that the resolution of the Government's assertion is governed by *United States v. Steele*, 733 F.3d 894 (9th Cir. 2013), in which the Ninth Circuit stated:

> Though district courts have heard prejudgment ineffective assistance of counsel claims on occasion, *see, e.g.*, *United States v. Del Muro*, 87 F.3d 1078, 1080 (9th Cir. 1996), we have not previously articulated the standard a *district court* should apply to decide whether to rule on such a claim. We agree with the Second Circuit's decision in *United States v. Brown*, that a district court need not "invoke an appellate court's rubric and require a defendant to use his one § 2255 motion to raise an ineffective assistance claim post judgment, particularly when the district court is in a position to take evidence, if required, and to decide the issue prejudgment." 623 F.3d 104, 113 (2d Cir. 2010). We adopt the rule in *Brown* that "when a claim of ineffective assistance of counsel is first raised in the district court prior to the judgment of conviction, the

district court may, and at times should, consider the claim at that point in the proceeding." *Id*. This decision is best left to the discretion of the district court. *See United States v. Miskinis*, 966 F.2d 1263, 1269 (9th Cir. 1992) (remarking in context of appellate review that "the decision to defer resolution of an ineffective assistance of counsel claim is a discretionary one and depends upon the contents of the record").

*See id.* at 897. Given the specific IAC claims raised in the Motion, the entirely of the record before the Court, and the fact-specific determinations necessary appropriately to address Defendant Torrence's IAC claims, the Court finds this to be one of those times that it "should" resolve the IAC claims in the prejudgment context as contemplated by the Ninth Circuit in *Steele*.

## II. Legal Standard

Rule 33 of the Federal Rules of Criminal Procedure provides in relevant part that "the court may vacate any judgment and grant a new trial if the interest of justice so requires." A district court's power to grant a motion for a new trial is "much broader than its power to grant a motion for judgment of acquittal." *United States v. Alston*, 974 F.2d 1206, 1211 (9th Cir. 1992). If the court determines "that a serious miscarriage of justice may have occurred, it may set aside the verdict, grant a new trial, and submit the issues for determination to another jury." *Id*. at 1211–12. A motion for a new trial "should be granted only in exceptional cases in which the evidence preponderates heavily against the verdict." *United States v. Pimentel*, 654 F.2d 538, 546 (9th Cir. 1981) (citation omitted).

To prevail on an ineffective assistance of counsel claim, a defendant must show that counsel's performance was deficient, and that this deficient performance prejudiced the defendant. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish prejudice, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id*. The court need not address both prongs if the defendant alleging ineffective assistance makes an insufficient showing on one. *Id*. at 697 ("[I]f it is easier to dispose of

an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed[.]").

## III. Analysis

To date, Defendant Torrence has failed to establish that attorney Wilson's performance "fell below an objective standard or reasonableness under prevailing norms of practice." *Strickland*, 466 U.S. at 687–88. Even if the Court were to grant Defendant Torrence's requested evidentiary hearing regarding attorney Wilson's trial-related decisions, the Court harbors serious doubt that he could make such a showing. Because Defendant Torrence has failed to establish prejudice for the reasons addressed below, however, the Court finds it unnecessary to determine whether attorney Wilson's performance was deficient.

### A. *Attorney Wilson's Scheduling Concerns and Pretrial Preparation*

Defendant Torrence first takes issue with the fact that, during a status conference on October 23, 2024, attorney Wilson failed to alert the Court to his participation in the "ongoing, complex state trial of *People v. Rodriguez*" and that "the possibility of delay was foreseeable and should have been brought to the attention of the Court at the trial confirmation." (*See* Mot. at 4, 8.) While it may have been prudent for attorney Wilson to do so—thereby avoiding the need for the Court to issue Orders denying a continuance request several weeks before trial, (*see* ECF Nos. 66, 70, 75, 77)—Defendant Torrence fails to identify any prejudice stemming from that lack of notice. In fact, at no point during the trial did attorney Wilson ever indicate that he needed additional time to prepare or that he had been unable to review all of the discovery materials provided by the Government. (*See generally* ECF Nos. 148–57 (transcripts).) To the contrary, the Court's observation is that attorney Wilson provided Defendant Torrence with a vigorous defense at trial and that attorney Wilson was well prepared to cross-examine and, when appropriate, impeach each of the witnesses called by the Government using materials provided during discovery. It is also significant that attorney Wilson had more than two years to prepare for Defendant Torrence's trial; thus, it is rather unsurprising that attorney Wilson effectively represented

Defendant Torrence notwithstanding his involvement in the *People v. Rodriguez* matter. In sum, the Court finds Defendant Torrence's workload notice-based IAC assertion to be unsupported by the record and, therefore, without merit.

### B. Failure to Object to Testimony of Brooke Bergman

Defendant Torrence devotes a significant portion of his Motion to what he characterizes as "Bergman's de facto expert testimony regarding police procedures and the behavior of domestic violence and sexual abuse victims." (*See* Mot. at 8–18.) According to Defendant Torrence, attorney Wilson's failure to object to Bergman's testimony constituted IAC. The Government makes two arguments in response: First, because Bergman's testimony was admissible lay opinion testimony under Rule 701 of the Federal Rules of Evidence, the failure to object could not possibly constitute IAC. Second, the Government asserts that the Court's *sua sponte* limiting instruction cured any prejudice that may have resulted from Bergman's testimony.

The Court need not determine whether attorney Wilson's failure to object to Bergman's testimony was objectively unreasonable under the first prong of the *Strickland* test because Defendant Torrence has made an insufficient showing of prejudice. Following the Court's limiting instruction, Defendant Torrence identifies as problematic three answers given by Bergman on redirect examination, (*see* Mot. at 14–15), and an additional four answers Bergman gave to questions about domestic violence and sexual abuse victims, (*see id.* at 15–16).[3] The Court assumes for purposes of ruling on the Motion that those seven answers were improper and that objections should have been lodged to the questions that elicited those answers. Having made that assumption, the issue before the Court is whether there is a reasonable probability that the jury's verdict would have been different

---

[3] The limiting instruction given to the jury appropriately addressed the questions and answers identified at pages 9 through 13 of the Motion, such that no prejudice resulted from those portions of Bergman's testimony. Even if no limiting instruction had been given, the Court would nevertheless conclude that Defendant Torrence has failed to establish the second prong of the *Strickland* test with regard to Bergman's testimony.

if attorney Wilson had kept those seven answers from the jury. Considering the nature of Bergman's challenged testimony and the record as a whole, the Court concludes that the challenged testimony likely had no effect on the jury's verdict.

The challenged testimony from Bergman touched upon a single victim (S.W.) in this multi-victim case and constituted only a small portion of Bergman's overall testimony. The challenged answers are also based on simple common sense: that if male and female officers respond to a domestic violence call and there is a need to take photographs of a female victim's sensitive body areas, the female officer should take the pictures; that it would not be appropriate for a police office to retake photographs of a female victim's chest five days after a domestic violence incident when the victim previously had stated she had sustained no injuries to her chest; and that is not unusual for victims of domestic violence and/or sexual abuse to be scared or reluctant to go to the police. The Court finds that Defendant Torrence suffered no prejudice from the jury being introduced to those rather axiomatic concepts. Further, Bergman was just one of over twenty witnesses called by the Government, and her testimony was not central to the Government's case.

To the extent that Bergman's testimony implicated Defendant Torrance's victimization of S.W., there was extensive evidence apart from Bergman's testimony in that regard. Having had an opportunity to observe the demeanor of S.W. on the witness stand and evaluating her testimony in light of all the evidence against Defendant Torrence, the Court finds her to be a highly credible witness. Thus, given the compelling nature of S.W.'s testimony, Bergman's testimony was of marginal import. Equally significant is that Defendant Torrence testified at trial and demonstrably lied to the jury about his interactions with S.W. Defendant Torrence told the jury that, after the initial domestic violence call, he never returned to S.W.'s house. That testimony stood in stark contrast to computer assisted dispatch ("CAD") records confirming defendant Torrence had, in fact, returned to S.W.'s house. But it was not only the CAD records that undermined defendant Torrence's testimony in that regard—the compelling testimony of S.W.'s daughter corroborated that
///

Defendant Torrence had lied about never returning to S.W.'s residence.[4]  Consequently, there is no reasonable probability that Bergman's challenged testimony affected the jury's verdict.

### C.     Failure to Interview and Call Witnesses

Next, Defendant Torrence faults attorney Wilson for not interviewing and calling Chris Aitken, Celia Amesquita, and Peter Padilla as defense witnesses at trial. (*See* Mot. at 18–22.) As the Government notes in its Response, however, both Aitken and Amesquita had previously provided statements that were potentially helpful to both the Government and the defense. (*See* Resp. at 13–14.) Thus, it was reasonable for attorney Wilson not to further pursue those dual-purpose witnesses. As for Mr. Padilla, the Court agrees with the Government that Defendant Torrence's assertion that Padilla "may have been able to impeach" testimony from S.R. (who was not a named victim in the superseding indictment) is much too generalized and speculative properly to support an IAC claim. (*See id.* at 14.)

Once again, however, the Court assumes for purposes of ruling on the Motion that attorney Wilson's decision not to interview and call Aitken and Amesquita as witnesses was objectively unreasonable. Having made that assumption, the Court turns its attention to whether the failure to call those witnesses resulted in prejudice sufficient to meet the second prong of the *Strickland* standard. For the reasons set forth below, the Court concludes that standard has not been met.

According to Defendant Torrence, Aitken could have been called to impeach L.S.'s testimony on a single issue—whether she had consensual sex with Defendant Torrence prior to the assault at her apartment alleged in Count 6 of the superseding indictment. (*See* Mot. at 20.) At trial, L.S. testified on cross-examination that she had never had consensual

---

[4]     As Defendant Torrence concedes, "[i]n essence, the trial was a credibility determination between Mr. Torrence and his accusers." (*See* Mot. at 2.) As confirmed by the jury's rather swift verdict merely 90 minutes after receiving the case for deliberations, the credibility determinations here were not difficult. The jury's verdict and credibility determinations were fully supported by the evidence.

sex with Defendant Torrence.[5]  (*See* ECF No. 149 at 92:18–22.)  In an interview with FBI agents on October 18, 2021, however, Aitken stated that L.S. had told him she had consensual sex with defendant Torrence one time "before things changed."  (*See* Mot. at 20 (quoting TORRENCE_0049722-0049723).)  But Defendant Torrence fails to address how L.S.'s hearsay statement to Aitken would be admissible under Rule 802 and whether the prior sexual activity of L.S. would be admissible under Rules 412(a) and (b).  Indeed, because Defendant Torrence's defense was that he had never had sexual contact with L.S. (or any of the other victims), it is unclear how the hearsay evidence pertaining to an alleged consensual sexual encounter between L.S. and Defendant Torrence would be admissible. (*See* Mot. at 2 ("At trial, Mr. Torrence did not contend that the alleged improper contact was consensual or had a legitimate law enforcement purpose.  Rather, the defense contended that the alleged misconduct did not occur.")); *see also* Rule 412(a) ("The following evidence is not admissible in a civil or criminal proceeding involving alleged sexual misconduct:  (1) evidence offered to prove that a victim engaged in other sexual behavior; or (2) evidence offered to prove a victim's sexual predisposition.").  Thus, Defendant Torrence has failed to establish that Aitken had admissible and relevant testimony favorable to the defense.  Accordingly, Defendant Torrence has failed to establish prejudice.

Nor has Defendant Torrence established prejudice with respect to witness Amesquita.  According to Defendant Torrence, Amesquita should have been called to impeach B.G.'s testimony that she told Amesquita "everything" regarding the assault by Defendant Torrence.  (*See* Mot. at 20.)  Consistent with B.G.'s trial testimony, however, Amesquita told the Government during a pretrial preparation interview that she "knew in detail" that a "Sanger Police Officer" had sexually assaulted one of her other granddaughters and because of that, she "knew exactly" was B.G. meant when B.G. had

---

[5]    No objection was made to the cross-examination regarding L.S.'s other sexual behavior.  *See* Federal Rule of Evidence 412(a)(1), (c)(1), and (c)(2).

confided in her that Defendant Torrence had done the same thing to her. (*See* Resp. at 13.) It is therefore unclear what impeachment, if any, could have been offered by Amesquita. What is clear, however, is that B.G. was a compelling and credible witness at trial. There is no reasonable probability that Amesquita's testimony would have served to undermine B.G.'s testimony in any meaningful way. Consequently, Defendant Torrence has again failed to satisfy the second prong of the *Strickland* test.

### D.     Failure to Strike Juror 6

Finally, Defendant Torrence argues that attorney Wilson should have struck Juror Number 6, who recognized T.L., a rebuttal witness called by the Government. (*See* Mot. at 23–24.) When Juror Number 6 brought that fact to the attention of the Court, he was questioned outside the presence of the other jurors. During that questioning, he stated that he had nothing more than a passing familiarity with T.L. and that he would not give her testimony any more or less credibility. As Defendant Torrence himself concedes, (*see id.* at 23 (citing ECF No. 156 at 145–48)), Juror Number 6 also unequivocally stated that he could be fair and impartial in considering the testimony of T.L. Despite the unambiguous statements of Juror Number 6, however, Defendant Torrence argues that there was "a significant possibility that he would be subconsciously biased against Mr. Torrence." (*See id.* at 23.)

Based on Juror Number 6's answers to the questions posed to him and his demeanor during the exchange with the Court and trial counsel, the Court finds that there is no support for Defendant Torrence's contention that Juror Number 6 should have been struck from the panel. To the contrary, Juror Number 6's diligence and conscientiousness in bringing his recognition of T.L. to the Court's attention, coupled with his candid and forthright answers to questions about any inability to be fair and impartial, compel the conclusion that Juror Number 6 was appropriately kept on the panel. Ultimately, Defendant Torrence's IAC claim based on the failure to strike Juror Number 6 is unsupported by the record and is without merit.

/ / /

# CONCLUSION

The Court finds that there is no reasonable probability that, but for attorney Wilson's allegedly unprofessional errors (considered individually or collectively), the jury's verdict in this case would have been any different. Accordingly, the Court respectfully **DENIES** Defendant Torrence's Motion for a New Trial (ECF No. 160).

**IT IS SO ORDERED**.

DATED: 9/19/2025

Hon. Todd W. Robinson
United States District Judge